**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>NINTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>ORANGE</u>   COUNTY, FLORIDA

<u>GARY LYONS</u>
Plaintiff

Case # _____
Judge  _____

vs.

<u>CHARTER COMMUNICATIONS INC</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐  $8,000 or less
- ☐  $8,001 - $30,000
- ☐  $30,001- $50,000
- ☒  $50,001- $75,000
- ☐  $75,001 - $100,000
- ☐  over $100,000.00

### III.    TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☐ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  <u>3</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ DeLayne D Penland</u>      Fla. Bar # <u>1024836</u>
      Attorney or party            (Bar # if attorney)

<u>DeLayne D Penland  </u>        <u>01/28/2025</u>
  (type or print name)         Date

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.:

GARY LYONS as Personal Representative of THE ESTATE OF DYLAN LYONS,

      Plaintiff,

vs.

CHARTER COMMUNICATIONS, INC. a Foreign Profit Corporation,

      Defendant.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiff, GARY LYONS as Personal Representative of the ESTATE OF DYLAN LYONS (hereinafter "LYONS"), and sue the Defendant, CHARTER COMMUNICATIONS, INC. (hereinafter "SPECTRUM"), and allege as follows:

## JURISDICTIONAL AND VENUE ALLEGATIONS

1.    This is an action for damages in excess of $50,000.00 (Fifty Thousand Dollars), exclusive of attorneys' fees, interest, and costs.

2.    At all times material hereto, Plaintiff LYONS was a resident of the State of Florida.

3.    At all times material hereto, Defendant SPECTRUM is a Foreign Profit Corporation with its principal place of business located in Stamford, Connecticut that conducts business in the State of Florida, including Orange County, Florida.

4.      Venue is appropriate and proper in Orange County pursuant to  § 47.011,
Fla. Stat. because this incident occurred in Orange County, Florida.

**ALLEGATIONS COMMON TO ALL COUNTS**

5.      At all times material hereto, Plaintiff LYONS was employed by Defendant
SPECTRUM as a news reporter covering live incidents for broadcast by Defendant
SPECTRUM.

6.      Defendant SPECTRUM operates more than thirty (30) local Spectrum News
television and digital networks in 12 states[1], including Spectrum News 13, which reports
television news. By providing such coverage, Defendant SPECTRUM derives economic
and advertising income benefits.

7.      Spectrum News 13 provides local television news coverage for incidents
occurring in Brevard, Flagler, Lake, Marion, Orange, Osceola, Polk, Seminole, and
Volusia.

8.      In furtherance of Plaintiff LYONS' employment duties, he was required to
travel to various locations in the Orlando / Daytona Beach / Melbourne Media Market
to cover live incidents for broadcast by Defendant SPECTRUM.

9.      Oftentimes, said live incidents involve violent incidents, including
homicides, that occur in high-crime locations.

---

[1] *About Spectrum Networks*, Charter Communications, https://corporate.charter.com/spectrum-networks,
(*last accessed* December 30, 2024).

10.     At all times material hereto, Defendant SPECTRUM had a non-delegable duty to maintain and provide a safe working environment to Plaintiff LYONS and others similarly situated.

11.     At all times material hereto, Defendant SPECTRUM had the responsibility, authority, and obligation to provide a workplace free from serious hazards.

12.     On or about February 22, 2023, while actively employed by Defendant SPECTRUM, Plaintiff LYONS was commanded by Defendant SPECTRUM to report on location at Harrington Drive and Hialeah Street in Pine Hills, Orange County, Florida, about the fatal shooting of Nathacha Augustin by an individual later identified as Keith Moses ("Moses"), despite Defendant SPECTRUM being aware the shooter was still at large at the time of such demand by Defendant SPECTRUM.

13.     During the same February 22, 2023 incident, Spectrum News photojournalist Jesse Walden was also wounded and left in critical condition but ultimately survived.

14.     While on scene reporting on the death of Nathacha Augustin, Plaintiff LYONS was ambushed, shot, and killed by Moses[2].According to the District Nine Medical Examiner's Office, Plaintiff LYONS' cause of death was gunshot wound to the chest, and the manner of death was Homicide.While employed by Defendant

---

[2]  Moses is currently being prosecuted by the State of Florida for the deaths of Plaintiff LYONS and other victims Nathacha Augustin, T'Yonna Major, and Brandi Major in Orange County, Florida Circuit Court Case Number 2023-CF-002486-A-O.

SPECTRUM, including at the time of Plaintiff LYONS' death, he was not provided with any security or protective equipment to protect against being attacked or shot.

15. Defendant SPECTRUM employs news reporters and videographers, such as Plaintiff LYONS, to go to active crime scenes involving violence and provide coverage. However, although Defendant SPECTRUM requires travel to high-crime areas, Defendant SPECTRUM does not provide said reporters and videographers with any personal protection measures or security personnel.

16. Journalists face an increasing threat of violence due to their work. Since 2017, at least 321 journalists, including Plaintiff LYONS, have been either shot or shot at by others[3].

17. On March 16, 2022, a journalist with NBC-affiliated station KJRH-TV was shot with a pellet gun while reporting live in Tulsa, Oklahoma[4].

18. On July 5, 2021, two journalists with KSAT 12 News in San Antonio, Texas, were shot at by a gunman, later killed by law enforcement while covering a fire at a home where law enforcement had discovered spent ammunition cartridge casings[5].

---

[3] Freedom of the Press Foundation, *Incident Database*, U.S. Press Freedom Tracker, https://pressfreedomtracker.us/all-incidents/?tags=shot+%2F+shot+at&categories=Assault (*last visited* December 30, 2024).
[4] Ryan Love, *Tulsa police look to identify people responsible for pellet gun shooting*, 2 News Oklahoma, https://www.kjrh.com/news/local-news/tulsa-police-looking-into-pellet-gun-shootings (*last visited* December 30, 2024).
[5] Ben Spicer, *SAPD: Man who opened fire at KSAT journalists fatally shot by officers*, KSAT-12 News, https://www.ksat.com/news/local/2021/07/05/investigators-working-to-determine-cause-of-house-fire-on-west-side/ (*last accessed* December 30, 2024).

19.    On September 4, 2017, a videographer with The New Carlisle News was shot while setting up his camera to photograph a traffic stop during a lightning storm while law enforcement mistook the journalist's tripod as a gun[6].

20.    On December 18, 2017, the Dart Center for Journalism at the Journalism School at Columbia University and the Trauma Research Lab at the University of Tulsa released their academic study "Journalists and Safety Training: Experiences and Opinions" (the "Study"). Bruce Shapiro, *Journalists and Safety Training: Experiences and Opinions*, Columbia Journalism School and University of Tulsa (December 18, 2017).

21.    The Study, which interviewed journalists and the safety training that existed then, identified that only 53 percent of journalists participated in safety training within the previous three years of the study and that only 43 percent of those surveyed reported ever taking a refresher course in safety. (Study, p. 5).

22.    Given these glaring discrepancies in safety training for journalists, including those similarly situated to Plaintiff LYONS, in October 2018, the Industry Standard for Safety Training ("ISST") was launched by the A Culture of Safety Alliance ("ACOS"), a global coalition of over 168 news organizations, journalist associations, and press freedom Non-Governmental Organizations that champion safe and responsible

---

[6] WKEF/WRGT, *"Somebody was looking out for me," journalist shot by Ohio deputy speaks*, Dayton 24/7 Now, https://dayton247now.com/news/local/officer-involved-shooting-reported-in-new-carlisle (*last accessed* December 30, 2024).

journalism practices.[7] Defendant SPECTRUM is not a signatory to ACOS and its
initiatives associated with journalist safety.

23.    The ISST curriculum calls for establishing and implementing specific
training courses to include Physical Threats, Hazards, and Risks focused in part on
weapons awareness, types, ranges, cover, and concealment. (ISST Item 2.5, as cited within
*Industry          Standard          for          Safety          Training*,
https://www.acosalliance.org/_files/ugd/c1a6a6_f03922f67800424489512ef861c48edb.
pdf (*last accessed* December 30, 2024).

24.    At all times material hereto, Defendant SPECTRUM, owed a duty to
protect, prevent, and warn Plaintiff LYONS and other reasonably foreseeable person(s)
employed by Defendant SPECTRUM while conducting their employment obligations
and requirements who could be exposed to an active shooter or violent assailant.

25.    At all times material hereto, Defendant SPECTRUM breached the duty
owed to Plaintiff LYONS and other reasonably foreseeable persons who could be exposed
to an active shooter or violent assailant.

26.    Plaintiff LYONS' death was a direct and proximate result of Defendant
SPECTRUM's negligence.

27.    Plaintiff LYONS' death was a direct and proximate result of Defendant
SPECTRUM's substantial certainty that an injury or death would occur.

---

[7] ACOS Alliance, *About US*, ACOS Alliance, https://www.acosalliance.org/about-acos (*last accessed*
December 30, 2024).

28.     Plaintiff LYONS' death was a direct and proximate result of Defendant

SPECTRUM's gross negligence.

29.     Plaintiff LYONS is survived by his mother and father. As a direct and

proximate result of Plaintiff LYONS' death, pursuant to § 768.21, Fla. Stat., damages of

the survivors and the estate are the following:

> a.     Beth and Gary Lyons, as surviving
> parents, have suffered mental pain and suffering, both
> in the past and future;

> b.     GARY     LYONS     as     Personal
> Representative for the ESTATE OF DYLAN LYONS,
> deceased, has incurred medical bills and funeral
> expenses; and

> c.     GARY     LYONS     as     Personal
> Representative for the ESTATE OF DYLAN LYONS,
> deceased, has suffered loss of net accumulations.

## COUNT I – NEGLIGENCE OF DEFENDANT

30.     Plaintiff LYONS re-alleges paragraphs one (1) through twenty-nine (29) as

though more fully set forth herein.

31.     At all times material hereto, Defendant SPECTRUM employed Plaintiff

LYONS as a news reporter for Spectrum News 13 in Orlando, Florida.

32.     At all times material hereto, Defendant SPECTRUM had a non-delegable

duty to maintain and provide a safe working environment for Plaintiff LYONS and others

similarly situated.

33.     At all times material hereto, Defendant SPECTRUM had a non-delegable duty to provide sufficient and reoccurring journalism safety training to Plaintiff LYONS and other reasonably foreseeable persons associated with their employment as news reporters reporting on active news events in the public.

34.     At all times material hereto, Defendant SPECTRUM owed a duty to Plaintiff LYONS and other reasonably foreseeable persons assigned to cover live news events with relevant and adequate safety equipment when violence or the threat of violence exists.

35.     At all times material hereto, Defendant SPECTRUM owed a duty to Plaintiff LYONS and other reasonably foreseeable persons who could be exposed to known dangers, such as an active shooter at large suspected of having committed recent violent acts.

36.     At all times material hereto, Defendant SPECTRUM owed a duty to Plaintiff LYONS and other reasonably foreseeable persons to conduct an appropriate risk assessment on potential news coverage assignments to ensure the safety and security of news reporters and staff before assigning coverage of active incidents.

37.     At all times material hereto, Defendant SPECTRUM owed a duty to provide adequate warning and instruction to employees, including Plaintiff LYONS, and other reasonably foreseeable persons who could be exposed to a dangerous and active shooter.

38.     At all times material hereto, Defendant SPECTRUM knew or should have known, that it was foreseeable that Plaintiff LYONS would be in the direct vicinity of an

at large shooter, whom Defendant SPECTRUM was aware had shot and killed another

individual.

     39.    At all times material hereto, Defendant SPECTRUM knew or should have

known that ordering that Plaintiff LYONS report to a location where a known deadly and

active shooter remained at large was likely to result in a substantial risk of serious and

catastrophic injury or death to Plaintiff LYONS.

     40.    At all times material hereto, Defendant SPECTRUM breached its duties to

Plaintiff LYONS by:

     a.    Failing to provide proper warning and instruction regarding the dangers associated with the active shooter.

     b.    Failing to provide proper training and education regarding the dangers of covering an active shooter incident and situational awareness while on a crime scene.

     c.    Failing to provide adequate safety equipment to protect against the violent attack of an at large active shooter.

     d.    Failing to exercise reasonable care under all of the relevant surrounding circumstances.

     e.    Failing to protect, prevent, and warn of the known dangers of the above-referenced active shooter; and

     f.    Any further negligent acts or omissions that have yet to be discovered.

     41.    Defendant SPECTRUM's negligence was the direct and proximate cause of

Plaintiff LYONS' death and the damages described herein.

**WHEREFORE**, Plaintiff, GARY LYONS, as Personal Representative of the
ESTATE OF DYLAN LYONS, demands judgment for damages against Defendant
SPECTRUM and further demands trial by jury.

## COUNT II –VIRTUAL CERTAINTY AND CONCEALED DANGER AGAINST DEFENDANT

42.     Plaintiff LYONS re-alleges paragraphs one (1) through twenty-nine (29) as
though more fully set forth herein.

43.     At all times material hereto, Defendant SPECTRUM was engaged in the
business of news broadcasting in Orlando, Florida through its ownership and control of
Spectrum News 13.

44.     At all times material hereto, Defendant SPECTRUM knew, or should have
known based on prior similar incidents or on explicit warnings identifying a known
danger, Plaintiff LYONS was virtually certain to come in contact with the active and
deadly at large shooter and be injured or killed.

45.     At all times material hereto, Plaintiff LYONS was commanded by
Defendant SPECTRUM to report to a location where an active shooter was at large who
had already killed another individual.

46.     At all times material hereto, Defendant SPECTRUM concealed the danger
from Plaintiff LYONS.

47.     At all times material hereto, Defendant SPECTRUM's actions were the
direct and proximate result of Plaintiff LYONS' death.

**WHEREFORE**, Plaintiff, GARY LYONS, as Personal Representative of the
ESTATE OF DYLAN LYONS, demands judgment for damages against Defendant
SPECTRUM and further demands trial by jury.

## COUNT III – GROSS NEGLIGENCE OF DEFENDANT

48.     Plaintiff LYONS re-alleges paragraphs one (1) through twenty-nine (29) as
though more fully set forth herein.

49.     At all times material hereto, Defendant SPECTRUM knew of a clear and
imminent danger concerning an active shooter in the direct location Plaintiff LYONS was
commanded to report.

50.     At all times material hereto, Defendant SPECTRUM acted with conscious
disregard for that clear and imminent danger by:

      a.     Failing to conduct an appropriate safety and
situational analysis before requiring Plaintiff LYONS to travel
to an active crime scene in a high-crime area to cover the
shooting death of another person.

      b.     Failing to warn Plaintiff LYONS of the known and
imminent danger of the demanded assignment regarding the
shooting and death of Nathacha Augustin.

      c.     Failing to provide Plaintiff LYONS with appropriate
safety equipment and security when covering an active crime
scene associated with the shooting death of another.

      d.     Commanding Plaintiff LYONS to report to the scene of
an active shooter, where one person was killed, and the
shooter was still at large in the area.

e.      Any further acts or omissions that have yet to be discovered.

51.    Defendant SPECTRUM's conduct demonstrates a reckless disregard for human life and the safety of all persons exposed to the dangerous effects of said conduct.

52.    Defendant SPECTRUM's conduct displays a want of care, which shows a conscious indifference to the consequences, a wantonness or recklessness, a grossly careless disregard of the safety and welfare of its employees, and/or a reckless indifference to the rights of others, which is equivalent to an intentional violation of Plaintiff LYONS.

53.    Defendant SPECTRUM's gross negligence was the direct and proximate cause of Plaintiff LYONS' death and the damages described herein.

**WHEREFORE**, Plaintiff GARY LYONS, as Personal Representative of the ESTATE OF DYLAN LYONS, demands judgment for damages against Defendant SPECTRUM and further demands trial by jury.

## DEMAND FOR A TRIAL BY JURY

Plaintiffs request a trial by jury on all issues so triable.

**RESPECTFULLY** submitted this 28th day of January 2025.

/s/ Mark E. NeJame
**Mark E. NeJame, Esq.**
Florida Bar Number: 310931
**Ryan J. Vescio, Esq.**
Florida Bar Number: 14032
**DeLayne D. Penland, Esq.**

Florida Bar Number: 1024836
**NEJAME LAW, P.A**
111 N. Orange Avenue, Suite 1300
Orlando, FL 32801
PH: (407) 500-0000
F:    (407) 802-1448
mark@nejamelaw.com
ryan@nejamelaw.com
delayne@nejamelaw.com
PI@nejamelaw.com
Attorney(s) for Plaintiff

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
## IN AND FOR ORANGE COUNTY, FLORIDA

GARY LYONS as Personal Representative  CASE NO.: 2025-CA-000699-O
of THE ESTATE OF DYLAN LYONS,

  Plaintiff,

vs.

CHARTER COMMUNICATIONS,
INC. a Foreign Profit Corporation,

  Defendant.

_____/

## **SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

  **YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the Complaint in this action on Defendant:

**CORPORATION SERVICE COMPANY,** as the Registered Agent,
**c/o CHARTER COMMUNICATIONS, INC.**
1201 HAYS ST
TALLAHASSEE, FL 32301

  Each Defendant is hereby required to serve written defenses to the Complaint or petition on Plaintiff's attorney, whose name and address are:

**Mark E. NeJame, Esquire**
NeJame Law, P.A.
111 North Orange Avenue, Suite 1300
Orlando, Florida 32801
Telephone: (407) 500-0000

within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

  **DATED** on _January/29/2025_

**(COURT SEAL)**



Tiffany Moore Russell, Clerk of Courts
**Civil Division**
425 N Orange Ave
Room 350
Orlando, Florida 32801

/s/ Dallas Mathis

## NOTICE

**IF YOU ARE A PERSON WITH A DISABILITY WHO NEEDS ANY ACCOMMODATION IN ORDER TO PARTICIPATE IN THIS PROCEEDING, YOU ARE ENTITLED, AT NO COST TO YOU, TO THE PROVISION OF CERTAIN ASSISTANCE. PLEASE CONTACT COURT ADMINISTRATION AT 425 N. ORANGE AVENUE, ROOM 2130, ORLANDO, FLORIDA 32801, TELEPHONE: (407) 836-2303 WITHIN TWO (2) WORKING DAYS OF YOUR RECEIPT OF THIS SUMMONS; IF YOU ARE HEARING OR VOICE IMPAIRED, CALL 1-800-955-8771.**

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANT

Se han iniciado acciones legales en su contra. Tiene 20 días consecutivos a partir de la fecha de esta citación para presentar una respuesta por escrito a la queja adjunta a este Tribunal. Una simple llamada telefónica no es suficiente para protegerlo. Debe presentar su respuesta por escrito, con el número de archivo anterior y los nombres de las partes nombradas aquí, si desea que el Tribunal escuche su caso. Si no presenta su respuesta por escrito en el relevo requerido, corre el riesgo de perder el caso y su salario, su dinero y su propiedad pueden ser incautados más tarde, sin notificación adicional por parte del Tribunal. Existen otras obligaciones legales y puede requerir los servicios inmediatos de un abogado. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de asistencia legal (que figura en el directorio telefónico).

Si elige presentar una respuesta por escrito, también se le solicitará, junto con esta formalidad, que envíe o envíe por correo una copia impresa o fotocopia de su respuesta por escrito al "Demandante / Abogado del demandante" (Reclamante o su abogado) nombra a continuación.

SI USTED ES UNA PERSONA CON UNA DISCAPACIDAD QUE NECESITA CUALQUIER ALOJAMIENTO PARA PODER PARTICIPAR EN ESTE PROCEDIMIENTO, ESTÁ TENIDO EL DERECHO, SIN COSTO PARA USTED, DE LA PROVISIÓN DE CIERTA AYUDA. PÓNGASE EN CONTACTO CON LA ADMINISTRACIÓN DEL TRIBUNAL EN 425 N. ORANGE AVENUE, ROOM 2130, ORLANDO, FLORIDA 32801, TELÉFONO: (407) 836-2303 DENTRO DE LOS DOS (2) DÍAS LABORABLES DE SU RECIBO DE ESTE SUMARIO DE ESTE SUMARIO; SI USTED ESTÁ AUDIENDO O VOZ, LLAME AL 1-800-955-8771.

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2025-CA-000699-O
DIVISION: 39

**GARY LYONS,**
      Plaintiff,
and

**CHARTER COMMUNICATIONS INC,**
      Defendant

_____/

## UNIFORM TRIAL AND CASE MANAGEMENT ORDER
**(General Track)**
*(Effective January 1, 2025)*

      PURSUANT TO Florida Rules of General Practice & Judicial Administration 2.250 and 2.545 and Florida Rules of Civil Procedure 1.200 and 1.440, and based on the case type designated in the initial filing (as required by AO 2021-04-03), the Court ORDERS as follows:

      1.    COMPLIANCE WITH UNIFORM TRIAL AND CASE MANAGEMENT ORDER. The parties must strictly comply with the terms of this Uniform Trial and Case Management Order ("UTCMO"), unless otherwise ordered by the court. Failure to comply with all requirements of this order may result in the imposition of sanctions, up to and including dismissal of this action or the striking of pleadings and entry of default final judgment.

      2.    ADDITIONAL NINTH CIRCUIT AND DIVISION-SPECIFIC GUIDELINES. All counsel and unrepresented parties must be familiar with and comply with the following: (a) Amended Administrative Order Establishing the Ninth Judicial Circuit Court Circuit Civil Court Guidelines (AO 2012-03-01); (b) Amended Administrative Order Establishing the Ninth Judicial Circuit Courtroom Decorum Policy (AO 2003-07-02); and (c) any division-specific guidelines published by the division (or the division judge) in which the case is pending.

      3.    MODIFICATION OF THIS ORDER. The parties may not, individually or by agreement, alter or extend the deadlines in this order or waive any of the provisions of this order. The provisions of this order may be modified only upon motion/stipulation and court order in

1

accordance with applicable law.

4.    SERVICE OF THIS ORDER WITH INITIAL PROCESS. The court will issue and electronically file a UTCMO within three (3) business days after the date of filing of the initial complaint.  Any party serving an initial pleading in this case must serve a copy of this order with initial service of process.

5.    CASE MANAGEMENT. The following pretrial deadlines are imposed. All dates are to be calculated from the date of the filing of the initial complaint unless otherwise noted. These are the dates that will control this case unless modified by court order pursuant to Florida Rule of Civil Procedure 1.200.

6.    TRIAL DATE.  This case is set for a jury trial during the trial docket beginning **01/04/2027** in **COURTROOM** **18-B** beginning at **9:00 a.m.** at the ORANGE COUNTY COURTHOUSE, 425 N. Orange Ave., Orlando, FL 32801.

7.    PRETRIAL CONFERENCE.  Lead Trial Counsel, or a trial partner with full authority,[1] and unrepresented parties must attend a Pretrial Conference on **11/30/2026** beginning at **10:00 a.m.** virtually at:

https://ninthcircuit.webex.com/join/39orange

The parties must comply with the requirements for pretrial conferences of the division to which the case is assigned.  No motions will be heard at the pretrial conference except as otherwise provided for in the division guidelines or allowed by court order.

---

[1] No other attorney may cover a pretrial conference unless they are: (i) fully prepared; (ii) have confirmed all pretrial requirements have been fulfilled, and (iii) have full authority from the client and lead counsel to make decisions about the case.

8.  CASE MANAGEMENT.  The following pretrial compliance deadlines are imposed.  All

dates must be calculated from the date of filing of the initial complaint unless otherwise

noted.

| Deadline for Service of Process: | 120 days |
|---|---|
| Automatic Extension for Service of Process if not perfected timely: | 30 additional days, for a total of 150 days.  If service of process is not completed by the end of the Automatic Extension, all unserved defendants are automatically dismissed without prejudice and without notice or further opportunity to be heard. |
| Initial Discovery Disclosures: | 60 days after service. *See* Fla. R. Civ. P. 1.280(a)(3). |
| Motions to Dismiss, Motions for More Definite Statement, Motions to Strike, and Any Objections to the Pleadings: | Must be filed, set for hearing and heard within 60 days from filing of the motion, or automatically deemed abandoned and denied without further order. |
| Disclosure of Expert Witnesses: | 365 days. |
| Deadline for Completion of Fact and Expert Discovery: | 540 days. |
| Motions for Summary Judgment, Daubert Motions and all other motions **except** motions in limine as set forth below: | Filed:     585 days. <br><br> Heard:   No later than 7 days prior to the Pretrial Conference or automatically deemed abandoned and denied without further order. |
| Motions in Limine: | Filed:     Prior to the Pretrial Conference. <br><br> Heard:   No later than 7 days prior to the beginning of the trial period |
| Mediation: | Completed prior to the Pretrial Conference. <br><br> Plaintiff must submit a mediation order[1] for entry by the Court once the date of |

---

[1] All mediation orders shall contain the following language: *All parties, counsel, authorized representatives and other mediation participants are hereby ordered to turn on your video cameras (and visually appear in your video) for the duration of the mediation conference unless otherwise excused by the mediator.*

3

| | mediation has been agreed and a mediator selected. |
|---|---|

9.      EXPERT WITNESSES. The following will govern proceedings related to expert witnesses.

a.      Within the time required in Paragraph 7 above, Plaintiff must disclose the expert witnesses (including both treating and hybrid experts) that Plaintiff actually intends to present at trial.  "Experts" is specifically defined in this order (wherever used) to include retained experts, treating experts and hybrid experts.

b.      Defendant must disclose the expert witnesses that Defendant actually intends to present at trial within 15 days of Plaintiff's expert witness disclosure or the time required by Paragraph 7, whichever is later.

c.      Plaintiff must disclose all rebuttal witnesses within 15 days of Defendant's expert witness disclosure or the time required by Paragraph 7, whichever is later.

d.      As used herein, "disclose" means furnishing in writing the expert's (a) name, business address and telephone number, (b) curriculum vitae or qualifications, (c) medical specialty or field of expertise, (iv) statement of the specific subjects upon which the expert will testify and offer opinions, and (v) the party or parties against whom the expert will be called to testify. Any changes in an expert's opinion or changes in the basis of the expert's opinion must be disclosed to all parties no less than 60 days prior to the Pretrial Conference.

e.      All out-of-court testing, experiments, or physical or mental examinations by experts must be completed prior to the expert's deposition.

10.     CLOSE OF DISCOVERY. Discovery closes 540 days after the initial filing of the action. All depositions must be completed by this date.  All answers to interrogatories, responses to requests to produce, and requests for admissions must be served by this date.  This deadline may only be extended by court order.  Joint stipulations to extend this deadline (without court

4

order) do not alter the discovery deadline.

  11. MOTIONS:

    a. PRETRIAL MOTIONS *(EXCLUDING MOTIONS IN LIMINE)*, MOTIONS FOR
     SUMMARY JUDGMENT AND DAUBERT MOTIONS. Must be filed within 585
     days of the date of the filing of the initial complaint and heard no later than 7
     days prior to the Pretrial Conference. Late-filed motions are subject to
     summary denial.

    b. MOTION IN LIMINE AND MOTIONS TO EXCLUDE WITNESSES OR
     EVIDENCE:  Motions in limine and motions to exclude witnesses or evidence
     must be filed and served prior to the Pretrial Conference. Motions in Limine
     must be scheduled and heard no later than 7 days prior to the beginning of the
     trial period. Motions in limine will not be heard during the trial period, absent
     good cause. No motion in limine may be scheduled for hearing unless it
     contains a certification of good faith attempt to resolve the matter at issue.
     Omnibus motions asking that the Court order the opposing party/counsel to
     comply with Florida law, the Florida Rules of Civil Procedure, and the Florida
     Rules of Professional Conduct are disfavored.

  12. MOTIONS FOR SUMMARY JUDGMENT. Motions for summary judgment are
subject to the deadline imposed above. Failure to respond to a motion for summary judgment
within the time required by Florida Rule of Civil Procedure 1.510(b) may result in the court granting
any relief available pursuant to Florida Rule of Civil Procedure 1.510(e). Refer to and comply with
any division requirements for additional requirements.

  13. EXCHANGE OF WITNESS LISTS AND EVIDENCE SCHEDULES. No less than
60 days before the Pretrial Conference, attorneys and unrepresented parties must serve the
following:

    a. A list of all witnesses including potential impeachment and rebuttal

5

witnesses who may testify at trial. The list must: (a) provide the name, address and telephone number of the witness, and (b) specify whether the witness is a liability, damage, rebuttal, or impeachment witness.

b.      A schedule of all exhibits, including depositions, a party may offer at trial, lettered sequentially. Exhibits must be described with specificity. For example, "all medical records" is insufficient.

14.    MEETING OF COUNSEL. No later than 15 days prior to the Pretrial Conference, lead counsel and pro se parties, if any, must meet. Live or videoconference attendance at this meeting by Lead Trial Counsel is mandatory. At the meeting, the attorneys and unrepresented parties must:

a.      Discuss and attempt to settle the case.

b.      Produce all documents to be offered at trial. Exhibits must be bates-stamped.

c.      Examine, and initial every exhibit (or entry on an Exhibit Schedule) to be produced by the opposing party at trial. The parties must agree on those exhibits which will be admitted as joint exhibits and those that can be admitted without objection. The parties must identify all other exhibits and specify all objections thereto. "Exhibit Schedules" must be prepared reflecting these separate categories of exhibits for each party. The Exhibit Schedules for each party must be attached to the Joint Pretrial Statement described below. Objections not noted are waived. Exhibits marked for identification must be listed alphabetically (*e.g.*, Ex. A) and, if received in evidence, will be listed numerically (*e.g.*, Ex. 1).

d.      Review opposing parties' witness lists.  Witness lists for each party must be attached to the Joint Pretrial Statement described below.

e.      Discuss and stipulate to any facts requiring no proof at trial.

f.      Discuss, clarify, and frame all factual issues of fact to be tried.

6

g.      Identify all legal, procedural, or evidentiary issues to be decided prior to or during trial.

h.      Discuss any evidentiary stipulations.

i.      Agree upon and draft a concise statement of the case to be read by the Court at the beginning of voir dire.

j.      Discuss the proposed jury instructions (voir dire through closing) and verdict forms. Discuss whether the Court will instruct the jury on the law prior to opening statements and, if so, which jury instructions are to be read at that time.

k.      Prepare Jury Instructions and a Verdict Form. Jury Instructions and Verdict Form must be emailed to the division email address to which the case is assigned in Word format no later than 3 business days before the first day of trial. The email for the jury instructions shall contain the following header on the email: "JURY INSTR.2025-CA-000699-O." The email for the Verdict form shall contain the following header on the email: "VERDICT FORM **2025-CA-000699-O**." External hard drives are discouraged. The parties must designate which instructions are agreed and which instructions, if any, are in dispute. Jury instructions must include a cover page with the case style. Any blanks or bracketed terms contained in the standard jury instructions must be filled in or deleted if inapplicable.

l.      Discuss and attempt to agree upon any other matters leading to a more orderly and expeditious trial.

m.      Prepare a Pretrial Checklist if required by the division procedures to the division email.  A courtesy copy of any required checklist must be emailed (but not filed) to the division email, together with the Joint Pretrial Statement, no less than 5 days prior to the Pretrial Conference.  The email for the Checklist and the Joint Pretrial Statement must contain the following header on the email: "CHECKLIST & PTS **2025-CA-000699-O**." Counsel shall review and comply with any additional requirement of the division.

15.     JOINT PRETRIAL STATEMENT. The parties must confer on, and file, a Joint

7

Pretrial Statement addressing the matters described below, no later than 5 days prior to the

Pretrial Conference, with a courtesy copy sent to the division email. If the Parties are unable to

agree on the contents of the Joint Pretrial Statement, the differing views should be set forth within

a single Joint Pretrial Statement. The Joint Pretrial Statement must contain the following:

     a.    A statement of the case to be read to the jury at the beginning of voir dire.

     b.    A statement of admitted facts that may be read at trial as a stipulation of
counsel.

     c.    A statement of the issues of fact to be tried.

     d.    A statement of the unresolved issues of law, procedure or evidence.

     e.    Each party's witness list.

     f.    Each party's schedule of exhibits with objections.

     g.    Any stipulation on evidentiary matters specifying the applicable matters to
which such stipulation applies, e.g., authenticity, hearsay exceptions, etc.

     h.    The number of peremptory challenges available to each party.

     i.    An estimate of the number of jurors requested for the venire panel and a
statement regarding the necessity of any jury panel in excess of 22 venirepersons.

     j.    A current estimate of the number of days (to include voir dire) required for
trial.

     k.    The specific category of damages, including attorneys' fees, claimed by
each party and, when possible, the amount of such damages sought by each party.

     l.    A designation of Lead Trial Counsel. No change of Lead Trial Counsel may
be made without leave of the Court if such change would disrupt the trial schedule.

     m.    A list of all pending motions and date filed.  Motions not timely heard in
accordance with the dates set forth herein are subject to summary denial.

     n.    A list identifying, with specificity, any matters of which the parties will ask
the Court to take Judicial Notice under sections 90.201 and 90.202, Florida Statutes, and

any objections or agreement thereto by opposing counsel.

16.     DEPOSITION DESIGNATIONS. No less than 30 days prior to the beginning of the trial period, each party must file designations of the depositions it intends to offer at trial. Counter (or "fairness") designations and objections, if any, must be filed within 7 days of the deposition designations. Objections to the counter-designations shall be filed within 7 days thereafter. Deposition designations must be heard by the Court before the first day of trial unless the court directs otherwise. If the parties cannot resolve objections to deposition designations, and no hearing time can be coordinated, the party making the objection must submit to the court a properly marked copy of the deposition transcript along with a proposed order identifying the page and line of the testimony to which the party objects, the basis for the objection, and a blank space for the Court to rule no later than 7 days prior to the first day of trial.

17.     [*FOR OPENING STATEMENTS ONLY*]: DEMONSTRATIVE AIDS, COMPUTER SLIDESHOWS AND/OR POWERPOINT PRESENTATIONS. Demonstrative aids, computer slideshows and/or PowerPoint presentations counsel seek to use *during opening statement* must be shared with opposing counsel no less than 3 business days prior to the beginning of trial. Computer slideshows and/or PowerPoint presentations may refer to what a party believes the evidence will show if the parties agree that the matter will, in fact, be received in evidence. Computer slideshows and/or PowerPoint presentations may not include argument or citations to legal authorities. Disputes over demonstrative aids, computer slideshows and/or PowerPoint presentations must be heard by the Court before the first day of trial. If the parties cannot resolve disputes over computer slideshows and/or PowerPoint presentations (and no hearing time can be coordinated), the demonstrative aids, computer slideshows and/or PowerPoint presentations are subject to being excluded during Opening Statement, subject to Division procedures.

18.     NOTICE OF SETTLEMENT. In the event of settlement, the parties must immediately email the division to which the case is assigned. The email header to the division email must be in the following form: "SETTLEMENT: **2025-CA-000699-O**." Thereafter, the parties

9

must file a Notice of Settlement signed by all parties. Noncompliance with this Paragraph will result in the case remaining on the docket as well as the possible imposition of sanctions. When a Notice of Settlement is filed, the parties are required to appear at trial call on the first day of their designated trial period unless expressly advised they are excused from appearing. If the parties are advised they are excused from appearing at trial call, the parties are directed to conclude the settlement and file the appropriate dismissal within 60 days, or the court may *sua sponte* enter an order of dismissal.

19.     DISCOVERY DISPUTES. All counsel and unrepresented parties must familiarize themselves with the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible. Counsel are also directed to familiarize themselves with Florida Rules of Civil Procedure 1.280(k), 1.340(a), 1.350(b), and 1.380.  Failure to comply with any Florida Rule of Civil Procedure may result in sanctions.

20.     MEET AND CONFER. The parties must comply with the "meet and confer" requirements of Florida Rule of Civil Procedure 1.202(d) **and** Administrative Order No. 2012-03. Any non-compliant motion or notice of hearing may be summarily stricken or denied by the Court, requiring resubmission of the motion, notice of hearing, or both.

21.     SANCTIONS. Failure to attend the meeting of counsel referenced above, the pretrial conference, or the trial, or to comply with the requirements of this order, may result in the imposition of appropriate sanctions, including but not limited to contempt, dismissal, default, striking of pleadings, exclusion of evidence, assessment of attorneys' fees or costs, or any combination thereof.

22.    AUDIO/VISUAL.  Requests for audio or visual equipment (or both) must be made at least three (3) business days in advance of trial to avoid delaying jury selection. All such requests must be made to the Ninth Circuit's Technology Support Department and not to the division email.  For assistance, see the Court's website: www.ninthcircuit.org, under Programs and Services, then Technology Support.

DONE and ORDERED in Orange County, Florida, on the date shown on the electronic signature.

01/30/2025 09:34:31
2023-CA-000699-O

eSigned by Michael Deen  01/30/2025 09:34:31 blz31zaW

**MICHAEL DEEN**
CIRCUIT JUDGE

Copies to Counsel of Record
Via Florida's e-Filing Portal

Aberlynn Derosier

11

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

GARY LYONS as Personal Representative
of THE ESTATE OF DYLAN LYONS,

        Plaintiff,                                   CASE NO.: 2025-CA-000699-O

v.

CHARTER COMMUNICATIONS, INC.,
a Foreign Profit Corporation,

        Defendant.

_____/

**DEFENDANT'S NOTICE OF APPEARANCE
AND DESIGNATION OF EMAIL ADDRESSES**

        NOTICE IS HEREBY GIVEN that Jerry D. Hamilton, Esq., Paul G. Totten, Esq. and Brian

T. Barriffe, Esq. of HAMILTON, MILLER & BIRTHISEL, LLP, hereby appear as counsel for

Defendant, CHARTER COMMUNICATIONS, INC., in this cause.  In compliance with Rule of

Judicial Administration 2.516(b)(i), the undersigned designates the below e-mail addresses for

service and respectfully requests all pleadings, notices, letters, correspondence and documents

regarding the above-captioned matter be served on:

        **PRIMARY EMAIL:**        jhamilton@hamiltonmillerlaw.com
                                           ptotten@hamiltonmillerlaw.com
                                           bbarriffe@hamiltonmillerlaw.com

        **SECONDARY EMAIL:**      spalkovich@hamiltonmillerlaw.com
                                           freyes@hamiltonmillerlaw.com

[CERTIFICATE OF SERVICE ON THE FOLLOWING PAGE]

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the court and furnished to counsel listed below via the Florida Courts E-Filing Portal on this 18th day of February, 2025:

Mark E. NeJame, Esq.
FBN: 310931
RyanJ. Vescio, Esq.
FBN: 14032
DeLayne D. Penland, Esq.
FBN : 1024836
**NEJAME LAW, P.A.**
111 N. Orange Avenue, Suite 1300
Orlando, FL 32801
Phone: 407-500-0000
Fax:    407-802-1448
mark@nejamelaw.com
ryan@nejamelaw.com
delayne@nejamelaw.com
PI@nejamelaw.com
*Counsel for Plaintiff*

Respectfully submitted,

*/s/  **Paul G. Totten***
**JERRY D. HAMILTON**
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
**PAUL G. TOTTEN**
Florida Bar No.: 529931
ptotten@hamiltonmillerlaw.com
**BRIAN T. BARRIFFE**
Florida Bar No.:  1024874
bbarriffe@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
100 South Ashley Drive, Suite 1210
Tampa, Florida 33602
Telephone: (813) 223-1900
Facsimile: (813) 223-1933
*Counsel for Defendant*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

GARY LYONS as Personal Representative
of THE ESTATE OF DYLAN LYONS,

   Plaintiff,         CASE NO.: 2025-CA-000699-O

v.

CHARTER COMMUNICATIONS, INC.,
a Foreign Profit Corporation,

   Defendant.

_____/

**DEFENDANT'S UNOPPOSED**
**MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

   Defendant, CHARTER COMMUNICATIONS, INC. (hereinafter "CHARTER"), by and through its undersigned counsel and pursuant to the applicable Florida Rule of Civil Procedure, jointly move for an extension of time to respond to Plaintiff's Complaint (hereinafter "Complaint"), and in support thereof states:

   1.  This action arises from a shooting, which occurred in Orange County, Florida, on February 22, 2023.

   2.  The Complaint was filed on January 28, 2025.

   3.  CHARTER was served with process on February 4, 2025.

   4.  Pursuant to the applicable rules, CHARTER's response to the Complaint is due on February 24, 2025.

   5.  Undersigned counsel has not had sufficient time to research the issues raised in the Complaint and therefore, needs additional time to respond to the Complaint.

6.      In light of the foregoing, the parties have conferred and agreed to the entry of an order fixing March 16, 2025 as the new due date for the filing of a response to the complaint by CHARTER.

7.      Accordingly, and for the above cause shown, the Defendant requests the entry of an Order extending the deadline to March 16, 2025 for the filing of CHARTER's response to the Complaint.

8.      This motion is made in good faith and not for purposes of delay.

9.      Undersigned counsel certifies that he has conferred with counsel for the Plaintiff before the filing of this motion and is authorized to represent that he does not oppose the granting of the relief requested herein.

10.      Further, no party will be prejudiced by the granting of the requested extension.

WHEREFORE, Defendant, CHARTER, respectfully requests the entry of an order granting this motion and setting March 16, 2025, as the due date for the filing of its response to the Complaint.

[Certificate of Service on Following Page]

2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the court and furnished to counsel listed below via the Florida Courts E-Filing Portal on this <u>24th</u> day of February, 2025:

Mark E. NeJame, Esq.
FBN: 310931
RyanJ. Vescio, Esq.
FBN: 14032
DeLayne D. Penland, Esq.
FBN : 1024836
**NEJAME LAW, P.A.**
111 N. Orange Avenue, Suite 1300
Orlando, FL 32801
Phone: 407-500-0000
Fax:    407-802-1448
mark@nejamelaw.com
ryan@nejamelaw.com
delayne@nejamelaw.com
PI@nejamelaw.com
*Counsel for Plaintiff*

Respectfully submitted,

<u>/s/</u>    ***Paul G. Totten***
**JERRY D. HAMILTON**
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
**PAUL G. TOTTEN**
Florida Bar No.: 529931
ptotten@hamiltonmillerlaw.com
**BRIAN T. BARRIFFE**
Florida Bar No.:  1024874
bbarriffe@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
100 South Ashley Drive, Suite 1210
Tampa, Florida 33602
Telephone: (813) 223-1900
Facsimile: (813) 223-1933
*Counsel for Defendant*

3

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

GARY LYONS as Personal Representative
of THE ESTATE OF DYLAN LYONS,

      Plaintiff,                           CASE NO.: 2025-CA-000699-O

v.

CHARTER COMMUNICATIONS, INC.,
a Foreign Profit Corporation,

      Defendant.

_____/

**AGREED ORDER GRANTING DEFENDANT'S JOINT UNOPPOSED
MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

THIS CAUSE having come before the Court, on Defendant, CHARTER COMMUNICATIONS, INC.'s ("Defendant"), Joint Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint, by agreement of the parties, and the Court having reviewed the Motion and being otherwise fully advised in the premises, it is hereby:

**ORDERED and ADJUDGED**:

1.     Defendant's Joint Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint is hereby GRANTED.

2.     Defendant shall file a responsive pleading to Plaintiff's Complaint on or before March 16, 2025.

ORDERED in Orange County, Florida on the date reflected in the e-signature below.

                                           13:24:01

                               eSigned by Michael Deen  02/26/2025 13:24:01  IW3zia31
                                   Circuit Court Judge

COURT SERVES PARTIES/COUNSEL OF RECORD VIA E-PORTAL. MOVANT IS RESPONSIBLE FOR SERVING ANY PARTY NOT PARTICIPATING IN ELECTRONIC FILING AND THEN FILING A CERTIFICATE OF SERVICE WITHIN THREE (3) BUSINESS DAYS OF THIS ORDER.

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

GARY LYONS as Personal Representative
of THE ESTATE OF DYLAN LYONS,

      Plaintiff,                              CASE NO.: 2025-CA-000699-O

v.

CHARTER COMMUNICATIONS, INC.,
a Foreign Profit Corporation,

      Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant CHARTER COMMUNICATIONS, INC. ("Charter") by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.140(b)(6) and 1.110(d), and under Florida Statute § 440.11, hereby files this Motion to Dismiss Plaintiff's Complaint, with prejudice, because Florida's Workers Compensation Act is Plaintiff's exclusive remedy, and in support thereof states as follows:

### Introduction

This action involves a claim by Gary Lyons as Personal Representative of The Estate of Dylan Lyons for damages relating to a tragic incident involving Charter's employee, Dylan Lyons ("Lyons"), who was fatally shot during the course and scope of his employment while working as a news reporter covering a story in Pine Hills, Florida. (Compl. ¶12.)

While the loss is an appalling one, under the Florida's Workers' Compensation Scheme enacted by the Florida Legislature, Plaintiff is required to submit these claims solely through Workers' Compensation. Under the statutorily prescribed mechanism for recovery under the Florida's Workers' Compensation Act, Defendant moves to dismiss Plaintiff's Complaint

CASE NO.: 2025-CA-000699-O

pursuant to Florida Statutes § 440.11. Although Plaintiff's Complaint makes a specific claim for "Virtual Certainty and Concealed Danger" – a clear attempt to fall under the exception to workers' compensation immunity – that pleading offers only threadbare, conclusory allegations which fail to satisfy the high pleading standard to enable him to proceed under the very specific "intentional tort" exception to the workers' compensation statute.  That standard requires a showing that the danger is virtually certain to result in an accident every, or almost every, time. Plaintiff has not and cannot show that this unfortunate tragedy was an intentional tort committed by Charter. As such, Florida's Workers Compensation Act is Plaintiff's exclusive remedy and mandates that the Complaint against Charter be dismissed.

## Background Facts

1.      Decedent Lyons was employed by Charter as a news reporter.  (Compl. ¶5.)  Part of his duties as a news reporter was covering live events for broadcast on the television news. (*Id.* at  ¶5-6.)

2.      The Complaint alleges that on February 22, 2023, Lyons was "commanded" by Charter to report on location in Pine Hills, Florida, about the fatal shooting of an individual, Nathacha Augustin, by an unknown individual who was still at large.  (*Id.* at  ¶12.)  The assailant was later identified as Keith Moses ("Moses").  (*Id.*)

3.      While on scene hours later and reporting on the fatal shooting of Augustin, Lyons was shot and killed by Moses, who had apparently returned to the scene.  (*Id.* at ¶14.)

4.      Lyons was employed by Charter and the fatal injury occurred within the course and scope of his employment.

## Memorandum of Law

### I.      Motion to Dismiss Standard

2

Florida Rule of Civil Procedure 1.110(b) "requires each claim for relief to state a cause of action. In addition to the jurisdictional statement and the relief sought, the complaint must contain a plain statement of ultimate facts establishing entitlement to relief." *Pratus v. City of Naples*, 807 So. 2d 795, 796 (Fla. 2d DCA 2002). Whether the allegations of a complaint are sufficient to state a cause of action is a question of law. *See Siegle v. Progressive Consumers Insurance Co.*, 819 So. 2d 732 (Fla. 2002).

The Florida Supreme Court has held that in order for a complaint to be legally sufficient, the plaintiff must still plead the ultimate facts to support each element of the cause of action. *Eastern Airlines v. King*, 557 So. 2d 574, 576 (Fla. 1990). Florida is a "fact-pleading" jurisdiction which requires pleading facts sufficient to support each cause of action alleged. *See Continental Banking Co. v. Vincent*, 634 So. 2d 242 (Fla. 5th DCA 1994) (noting that (1) Florida's pleading requirements are more demanding than the federal "notice pleading" requirements, and (2) "Florida's pleading rule forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it, which avoids a great deal of wasted expense to the litigants and unnecessary judicial effort."); *Ranger Construction Industries, Inc. v. Martin Companies of Daytona, Inc.*, 881 So. 2d 677, 680 (Fla. 5th DCA 2004)( "The Florida Rules of Civil Procedure require fact pleading.").

For the purposes of a motion to dismiss, the well-pleaded material allegations of the complaint are taken as admitted, but conclusions of law or unwarranted deductions of fact are not admitted. *Ellison v. City of Fort Lauderdale*, 175 So. 2d 198, 200 (Fla. 1965). To survive a motion to dismiss, a plaintiff must allege more than opinions or conclusions unsupported by specific facts. *Other Place of Miami, Inc. v. City of Hialeah Gardens*, 353 So. 2d 861, 862 (Fla. 3d DCA 1978); *Okeelanta Power Limited Partnership v. Florida Power & Light Co.*, 766 So. 2d

3

CASE NO.: 2025-CA-000699-O

264 (Fla. 4th DCA 2000); *Brandon v. County of Pinellas*, 141 So. 2d 278 (Fla. 2d DCA 1962). The court "will not be bound by bare allegations that are unsupported or unsupportable." *Other Place of Miami*, 353 So. 2d at 862. Where a complaint fails to allege sufficient ultimate facts to establish each element, dismissal for failure to state a cause of action is appropriate. *Condo. Ass'n v. Roof Servs.*, 119 So.3d 1288, 1290 (Fla. 4th DCA 2013).

## II.    Plaintiff's claims do not avoid the exclusive remedy of workers' compensation.

### A.  The affirmative defense of workers' compensation immunity is properly considered on a motion to dismiss

Although worker's compensation immunity is an affirmative defense, it may be properly raised by a motion to dismiss the complaint where the workers' compensation immunity issue appears on the facts of the complaint. *Moucha v. Burger King Corp.*, 450 So. 2d 335, 336 (Fla. 5th DCA 1984) (citations omitted); *See* Fla. R. Civ. P. 1.110(d); *Davis v. Sun First Nat. Bank of Orlando*, 408 So. 2d 608 (Fla. 5th DCA 1981).  Under Florida Rule of Civil Procedure Rule 1.110(d) "'Affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion . . . under Rule 1.140(b) [governing motions to dismiss] . . . .' The purpose of the rule is '. . . to permit a motion to dismiss for failure to state a cause of action to take advantage of an affirmative defense appearing on the face of the pleading to which the motion is directed. If the pleader affirmatively shows that he has no claim in his pleading, the claim should be disposed of at the earliest possible stage. . . .'" *Gen. Cinema Bevs. v. Mortimer*, 689 So. 2d 276, 278 (Fla. 3d DCA 1995).

In *Ramirez v. Mod. Constr. Experts, LLC*, 2021 Fla. Cir. LEXIS 17707, *4-6, the Court found because the complaint contained allegations by the plaintiff as to a lack of worker's compensation immunity, the exclusionary provisions of section 440.11, Florida Statutes were correctly raised in the defendant's motion to dismiss. *Id.* (citing *Walker v. I.T.D. Industr., Inc.*,

4

437 So. 2d 230 (Fla. 2nd DCA 1983); *Gonzalez v. Addi Co.*, 444 So. 2d 1132 (Fla. 4th DCA 1984)).

Similarly, in *Ruiz v. Aerorep Grp. Corp.*, 941 So. 2d 505, 507-08 (Fla. 3d DCA 2006), the court noted "[a]lthough workers' compensation immunity usually cannot be raised in a motion to dismiss, an exception exists allowing the defense to be raised in a motion to dismiss where the defense appears on the face of the complaint." The *Ruiz* court found that the operative complaint specifically alleged that the incident occurred within the course and scope of employment and as such concluded that the trial court properly dismissed the battery claim against the defendant employer based on the employer's entitlement to workers' compensation immunity. *Id.*

Here, Plaintiff's complaint alleges facts sufficient to show the existence of a worker's compensation defense and thus the issue of worker's compensation immunity is appropriately decided on a motion to dismiss. *Gen. Cinema Bevs. v. Mortimer*, 689 So. 2d 276, 278 n.3 (Fla. 3d DCA 1995). The allegations in the Complaint establish (1) the decedent was employed by Charter (Compl. ¶12) and (2) that the decedent was killed during the course and scope of his employment with Charter (*Id.*). In addition to establishing an employment relationship and that the incident occurred during the course and scope of employment, Plaintiff's complaint also sets forth a claim for Virtual Certainty and Concealed Danger (Count II), which is a claim that on its face attempts to establish the "intentional tort" exception to the workers' compensations statute. Thus, the worker's compensation immunity defense appears on the face of the complaint and is properly raised by a motion to dismiss.

### B.    The Workers' Compensation Act

"When an employee's injury arises out of the course and scope of his or her employment, worker's compensation is the exclusive remedy for the injury, and the employer is provided with

immunity from any other liability for the injury." *Ruiz*, 941 So. 2d at 507-508 (citing *FCCI Ins. Co. v. Horne*, 890 So. 2d 1141, 1143 (Fla. 5th DCA 2004); *Lovin Mood, Inc. v. Bush*, 687 So. 2d 61, 62 (Fla. 1st DCA 1997)).  The Florida legislature has given employees in this state a very clear and specific mechanism to receive payment for on-the-job injuries. The workers' compensation system guarantees a "quick and efficient delivery of disability and medical benefits to an injured worker" and "facilitate[s] the worker's return to gainful reemployment at a reasonable cost to the employer." Fla. Stat. § 440.015. This statutory scheme "is based on a mutual renunciation of common-law rights and defenses by employers and employees alike." *Id.* "Injured employees who fall within the scope of this provision are to be swiftly provided compensation and necessary medical benefits by the employer, irrespective of fault as a cause of the injury." *Bakerman v. The Bombay Co.*, 961 So. 2d 259, 261 (Fla. 2007). The trade off in relation to these benefits is that the employees are barred from pursuing actions in tort for injuries which occur during the course and scope of their employment. Under this modified no-fault system, employers in compliance with the Workers' Compensation Act are immune from their employees' common law negligence actions for damages arising from work-related injuries. *Id.* at 262; *see also* § Fla. Stat. 440.11(1).

The Florida's workers' compensation scheme provides the exclusive remedy where an employee is injured in the course and scope of his or her employment.  *Ramirez*, 2021 Fla. Cir. LEXIS 17707, *4-6.  Employers are therefore immune from liability for negligence to employees for injuries which occur during the course and scope of employment.  *Id.*  The only two exceptions to worker's compensation immunity are "(1) when the employer fails to secure workers' compensation coverage, or (2) when the employer commits an intentional tort."  *Id.* (citing *Gustafson's Dairy, Inc. v. Phiel*, 681 So. 2d 786, 790 (Fla. 1st DCA 1996)).

6

CASE NO.: 2025-CA-000699-O

Fla. Stat. § 440.11(1)(b) sets forth the test which a court must use to analyze whether an

action against an employee may proceed:

> (b) When an employer commits an intentional tort that causes the injury or death
> of the employee. For purposes of this paragraph, an employer's actions shall be
> deemed to constitute an intentional tort and not an accident only when the
> employee proves, by clear and convincing evidence, that:
>
> 1. The employer deliberately intended to injure the employee; or
>
> 2. The employer engaged in conduct that the employer knew, based on prior
>    similar accidents or on explicit warnings specifically identifying a known
>    danger, was virtually certain to result in injury or death to the employee, and
>    the employee was not aware of the risk because the danger was not apparent
>    and the employer deliberately concealed or misrepresented the danger so as to
>    prevent the employee from exercising informed judgment about whether to
>    perform the work.

Fla. Stat. § 440.11(1)(b)

Section 440.11 gives an employer "immunity from civil suit by the employee, except in

the most egregious circumstances." *Bakerman*, 961 So. 2d at 262; *see also List Indus., Inc. v.

Dalien*, 107 So. 3d 470, 473 (Fla. 4th DCA 2013) ("A civil personal injury lawsuit by an

employee against an employer under section 440.11 was intended to be the rarest of exceptions

to the immunity granted to the employer.").

### C.    Charter is immune from suit as Lyons' employer.

Plaintiff's Complaint clearly alleges that (1) Lyons was employed by Lyons as a news

reporter, (2) that Charter "commanded" Lyons to report on scene about the shooting of Augustin,

and (3) that Lyons was fatally injured while he was on scene engaged in that reporting.   (*Id.* at

¶5-6, 12, 14.)   It is equally clear that Lyons was injured in the course and scope of his

employment with Charter. Because Charter is Lyons' employer under the worker's compensation

statute, it is immune from suit because Lyons' statutory compensation is the exclusive remedy.

7

### i. Plaintiff cannot meet any of the exceptions to workers' compensation immunity.

Plaintiff does not make any allegation as to failure to procure workers' compensation insurance or failure to pay benefits. The only remaining exception to workers' compensation immunity is the "intentional tort" exception which is a very specific exception that the statute defines as encompassing two scenarios. The first scenario is when an employer deliberately injures an employee § 440.11(1)(b)(1), Fla. Stat.;" Unquestionably, Plaintiff cannot establish that Charter deliberately intended to injure Lyons, nor has Plaintiff alleged such.

The second exception arises when an employer has specific knowledge of a specific danger:

1.  The employer engaged in conduct that the employer knew, based on similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee; *and*

2.  The employee was not aware of the risk because the danger was not apparent; *and*

3.  The employer deliberately concealed or misrepresented the danger to prevent the employee from exercising informed judgment about whether to perform the work.

*Gorham v. Zachry Indus., Inc.*, 105 So. 3d 629, 633 (Fla. 4th DCA 2013) (citing section 440.11(1)(b)). None of the elements of section 440.11(l)(b)(2) are present here.

### 1. Plaintiff has failed to allege sufficient facts that Charter engaged in conduct it knew was virtually certain to result in injury or death.

First, Plaintiff has failed to allege ultimate facts to overcome the first prong. There are no facts concerning prior similar incidents or explicit warnings that put Charter on notice of any "known danger." *See generally Cutler v. Board of Regents of State of Fla.*, 459 So. 2d 413, 415 (Fla. 1st DCA 1984) (dismissing the complaint where the plaintiff failed to allege ultimate facts supporting her conclusion that the defendants knew of prior incidents).

8

CASE NO.: 2025-CA-000699-O

The workers' compensations statute was strengthened by the legislature in 2003 to change the burden from "substantially certain" to "virtually certain." The new standard took effect on October 1, 2003. The "virtual certainty" standard "is an extremely different and a manifestly more difficult standard to meet [than the previous substantial certainty standard]. It would mean that a plaintiff must show that a given danger will cause an accident every - or almost every - time." *List Indus., Inc.*, 107 So. 3d at 471.

Plaintiff cannot support a claim that Charter engaged in conduct virtually certain to result in injury or death to Lyons. As a threshold matter, Plaintiff seeks to hold Charter liable under an intentional tort theory for the sudden criminal attack of a third party. Generally, unless there is a special relationship, there is no legal duty to protect a person from criminal attacks of third parties over whom it has no control. *Boynton v. Burglass*, 590 So.2d 446, 448 (Fla. 3d DCA 2004) ("Florida courts have been loathe to impose liability based on a defendant's failure to control the conduct of a third party."). Moreover, even where a special relationship exists, there must be sufficient allegations that show that the attack was foreseeable or anticipated. *Saunders v. Baseball Factory*, 361 So. 3d 365 (Fla. 4th DCA 2023) (affirming order granting motion to dismiss complaint involving an aggravated battery at a baseball game where the complaint failed to allege facts to show that the defendant was on notice of the potential for violence"); *Menendez v. Palms West Coast Condo. Ass'n, Inc.,* 736 So. 2d 58, 60 (Fla. 1st DCA 1999)( A "landowner should not be required to take precautions against a sudden attack which the landowner has no reason to anticipate."). Here, Plaintiff has pled no ultimate facts to show that the incident was foreseeable, much less the more stringent standard of "virtually certain" to occur. *See* Black's Law Dictionary Abridged Sixth Edition, p. 449 (defining foreseeability as "[t]hat which is objectively reasonable to expect, not merely what might conceivably occur").

9

Here, Plaintiff alleges in a conclusory fashion that "LYONS' death was a direct and proximate result of Defendant SPECTRUM's substantial certainty that an injury or death would occur." (Compl. ¶27.)  The Complaint also alleges that Charter knew or should have known "based on prior similar incidents or on explicit warnings identifying a known danger, Plaintiff LYONS was virtually certain to come in contact with the active and deadly at large shooter and be injured or killed."  (*Id.* at ¶44.)  Plaintiff further alleges—with no supporting allegations whatsoever—that Defendant "concealed the danger from Plaintiff LYONS." (*Id.* at ¶46.)

The threadbare allegations in the Complaint do not rise to the level necessary to satisfy the pleading requirement to state a claim for the intentional tort exception to the workers' compensation scheme. Under black letter law, Plaintiff must allege sufficient ultimate facts which demonstrate that Charter engaged in conduct it knew was "virtually certain" to result in injury or death to Lyons, based on prior similar incidents or explicit warnings.

Plaintiff has failed to meet this burden.  Plaintiff has not alleged any prior similar incidents where an employee of Charter was shot while reporting on a news story. Plaintiff has not alleged that Charter was aware there was an active shooter in the area, or even aware that Moses was still in the area after having fled the scene following the shooting of Augustin.  Plaintiff has not alleged that Charter was advised by any police department—or anyone at all—that there was an ongoing threat posed by Moses in the area; or that Charter ordered Lyons to report from a prohibited area or an area that had been secured and blocked off by police to the general public due to an active and ongoing manhunt for Moses.[1]  Plaintiff has failed to allege any ultimate

---

[1]  Nor can he in good faith amend the instant Complaint to bring such allegations as they would be unsupported and unsupportable.  In a related case filed in the United Stated District Court for the Middle District of Florida, filed by the Estate of Dylan Lyons against the Sheriff of Orange County, it is alleged by the Estate of Dylan Lyons that the crime scene was reopened to the public within four hours of Augustin's shooting, a description of Moses was not distributed by

10

CASE NO.: 2025-CA-000699-O

facts whatsoever to show that Charter had reason to believe that the fatal shooting of Augustin was anything other than a singular targeted criminal attack, and had reason to believe that Moses was still in the area and would continue to shoot and kill others.

Instead, Plaintiff alleges a generalized danger to all news reporters across the country, with no allegations that Charter was aware of this danger or that any of those prior incidents involved Charter employees or reporters in the same area where Plaintiff was injured.  This does not rise to the level that the "given danger will cause an accident every - or almost every – time" as required under the statute.  In short, the Complaint contains no facts to support the allegation that Charter knew Lyons was "virtually certain to come in contact with the active and deadly at large shooter and be injured or killed."  (Compl. at ¶44.)

This attempt to circumvent the exclusive remedy set forth under Fla. Stat. §440.11 fails. Plaintiff cannot merely set forth conclusive allegations to overcome the extremely difficult standard prescribed by Florida Statute.  Alleging "gross negligence"[2] and "recklessness" are insufficient.  The statute clearly requires (1) that the employer engaged in conduct which was virtually certain to result in injury or death to the employee; (2) the employer knew the danger of injury due to prior similar incidents or explicit warnings; and (3) the employee was not aware of

---

police, and  the presence of Moses in the area was not disclosed by police who indicated "everything is under control."  (*See* Complaint, Ex. "A" at ¶¶22-24, 28.)  The court may take judicial notice of the fact that these allegations were made in another lawsuit.  This Court may take judicial notice of "[r]ecords of any court of this state or of any court of the United States or of any state, territory, or jurisdiction of the United States." *Green Tree Servicing Llc v. Hardmon*, 2015 Fla. Cir. LEXIS 534 (Fla. Cir. Nov 13, 2015), *2 (citing *Fla. Stat.* §90.202(6)(2015); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)(court may take judicial notice of filings in other court proceedings).

[2]  Plaintiff's Complaint makes a claim for Gross Negligence (Count III).  Needless to say, Charter denies it was either negligent or grossly negligent.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 Miami, Florida 33131·Telephone: 305-379-3686 Facsimile: 305-379-369

that risk due to concealment of misrepresentation of the danger by the employer.  Fla. Stat. §
440.11.  Plaintiff has failed to make this showing.

In *Ramirez v. Mod. Constr. Experts, LLC*, 2021 Fla. Cir. LEXIS 17707 (Fla. 14th Cir. Ct.,
March 29, 2021), *4-6, the court dismissed the plaintiff's complaint, holding that the sole
remedy for the negligence claim against the defendant was under the Florida workers'
compensation law.  *Id.* (citing *Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 90-91 (Fla. 2005)).
The court noted that the complaint did not allege that the defendant failed to secure workers'
compensation coverage or that it deliberately intended to injure the plaintiff.  *Id.*  Furthermore,
the court found that the complaint did not "include sufficient facts to show that [the defendant]
engaged in conduct that was virtually certain to result in [the plaintiff's] injuries, that [the
plaintiff] was not aware of the risk, and that [the defendant] deliberately concealed and
misrepresented the danger."  *Id.*  Notably, here, Plaintiff's Complaint not only fails to allege
sufficient facts but it also fails to allege that Charter *deliberately* concealed and/or
misrepresented the danger, and further fails to allege that Plaintiff was not aware of the risk.

Similarly in *Jackson v. Wal-Mart Stores, Inc.*, No. 6:09-cv-777-Orl-28GJK, 2009 U.S. Dist.
LEXIS 92070, at *4 (M.D. Fla. Oct. 1, 2009), the court granted the defendant Wal-Mart's motion
to dismiss based on workers' compensation immunity where the plaintiff alleged she was injured
while unloading a delivery truck due to a malfunctioning docking plate while working as an
employee of Wal-Mart. The plaintiff alleged that Wal-Mart recklessly and/or intentionally failed
to maintain the docking plate, and ignored its condition and did nothing to prevent employees
from using it. *Id.* In finding that the plaintiff had failed to show an intentional tort necessary to
establish an exception to the workers' compensation act, the court noted that the complaint
contained no allegations that other employees had been injured in the past using that

12

CASE NO.: 2025-CA-000699-O

malfunctioning docket plate and that because of the long period of use the court found that "Wal-Mart's continued use of the malfunctioning docking plate did not create a "virtual certainty" of injury or death enabling [the plaintiff] to remove her claim from the worker's compensation scheme." *Id.*

In *Locke v. Suntrust Bank*, No. 8:05-CV-1956-T-17-MAP, 2006 U.S. Dist. LEXIS 18059, at *8-9 (M.D. Fla. Apr. 10, 2006), the court granted a motion to dismiss against a bank employee based on worker's compensation immunity for a claim arising from an armed robbery of a bank. In dismissing the claim, the court held:

> First, this Court finds that the Plaintiff's injuries are casually related to her employment as a bank manager. The Court notes that the armed robbery of the Defendant's Sun Trust bank is a risk inherent in the nature of Plaintiff's employment. Thus, the Plaintiff's claim of negligence in dismissed with prejudice. Furthermore, Plaintiff's intentional tort claim is also dismissed for failing to allege facts from which a reasonable person would understand that the Defendant's conduct was substantially certain[3] to result in injury or death to the Plaintiff. Plaintiff's allegations, even if proven, would not support an intentional tort claim against the Defendant. Since Plaintiff has not alleged any additional facts to support a cause of action against Defendant, this Court finds that a leave to amend Plaintiff's complaint would be futile. Based on these findings, it is clear to the Court that worker's compensation is the Plaintiff's exclusive remedy.

*Id.*

Similarly, here, Plaintiff's Complaint fails to allege any ultimate facts which establish entitlement to an exception to the workers' compensation statute.  Plaintiff's Complaint consists only of unsupported conclusory statements which fail to establish that Charter's conduct was virtually certain to result in injury or death to Plaintiff.  As such, Charter respectfully submits its Motion to Dismiss should be granted.

---

[3]    Defendant notes that this decision was decided under the less difficult "substantially certain" standard.

13

CASE NO.: 2025-CA-000699-O

**2.    Plaintiff has failed to allege that Charter deliberately concealed or misrepresented the danger.**

Plaintiff's Complaint does not, and cannot, allege that Charter "deliberately concealed or misrepresented the danger" presented by Moses' acts (or allegedly by the Orange County Sheriff's Office) that would have prevented Lyons from "exercising informed judgment about whether to perform the work." Absent such a showing, Plaintiff cannot meet the intentional tort exception to workers' compensation immunity. Fla Stat. 440.11(l)(b)(2).

### Conclusion

Plaintiff's Complaint attempts to avoid applicable immunity under workers' compensation by bringing a claim for Virtual Certainty and Concealed Danger (Count II) which sets forth conclusory allegations which mirror the language of the exception to Florida Statute § 440.11. The Complaint is devoid of ultimate facts which would meet the high standard necessary to invoke this exception which requires *virtual certainty*. The general facts alleged by Plaintiff as to the journalism profession as a whole are insufficient to rise to the level required under Florida Statute § 440.11 – namely, that "a given danger will cause an accident every – or almost every – time." Plaintiff has not alleged any other prior instances of criminal attacks upon Charter employees while on scene reporting, nor has Plaintiff alleged any facts that Charter deliberately concealed any danger from Plaintiff or that Lyons was unaware of any danger due to the risk being unapparent, concealed, or misrepresented. As such, Plaintiff's claims are barred by the exclusive remedy prescribed under Florida Statute § 440.11 and the Complaint should be dismissed.

WHERERFORE Defendant CHARTER COMMUNICATIONS, INC. requests this court grant Defendant's Motion to Dismiss because the Workers Compensation Act is Plaintiff's exclusive remedy. Charter is immune from suit under Florida Statutes § 440.11.

14

CASE NO.: 2025-CA-000699-O

Respectfully submitted,

*/s/ Paul G. Totten*

**JERRY D. HAMILTON**
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
**PAUL G. TOTTEN**
Florida Bar No.: 529931
ptotten@hamiltonmillerlaw.com
**BRIAN T. BARRIFFE**
Florida Bar No.:  1024874
bbarriffe@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
100 South Ashley Drive, Suite 1210
Tampa, Florida 33602
Telephone: (813) 223-1900
Facsimile: (813) 223-1933
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

court and furnished to counsel listed below via the Florida Courts E-Filing Portal on this 28th day

of March, 2025:

Mark E. NeJame, Esq.
FBN: 310931
Ryan J. Vescio, Esq.
FBN: 14032
DeLayne D. Penland, Esq.
FBN : 1024836
**NEJAME LAW, P.A.**
111 N. Orange Avenue, Suite 1300
Orlando, FL 32801
Phone: 407-500-0000
Fax:    407-802-1448
mark@nejamelaw.com
ryan@nejamelaw.com
delayne@nejamelaw.com

15

CASE NO.: 2025-CA-000699-O

PI@nejamelaw.com
*Counsel for Plaintiff*

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 Miami, Florida 33131·Telephone: 305-379-3686 Facsimile: 305-379-369