UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GARY LYONS, as Personal Representative
of THE ESTATE OF DYLAN LYONS,

     Plaintiff,

                           CASE NO.: 6:25-cv-00848-ACC-LHP

v.

CHARTER COMMUNICATIONS, INC.,
a Foreign Profit Corporation,

     Defendant.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, GARY LYONS, as Personal Representative of THE ESTATE OF DYLAN LYONS, by and through the undersigned counsel, hereby files its response to Defendant's Motion to Dismiss the Plaintiff's First Amended Complaint [Doc. 25], as follows:

## I.    INTRODUCTION

In approximately 49-48 BCE, Julius Caesar wrote in his book *Commentarii de Bello Civili* (Commentaries on the Civil War) that "*Experientia est rerum magistra*" ("Experience is the teacher of all things"). (*Commentarii de Bello Civili*, Book II, Ch. 8) This statement came from Caesar observing an enemy fleet of ships and being able to recognize a situation for strength, weakness, or danger.

1

However, without experience as a teacher, on February 22, 2023, Lyons lacked the experience, training, and intuition to assess a news scene and to flee the same before he was killed. In traveling to Harrington Drive and Hialeah Street that day, Lyons could only rely upon the concealment and misrepresentation of the Defendant, who operates more than 30 separate television and digital news networks in 12 states, as to dangers lurking on news sites in high crime areas through the Defendant's refusal to acknowledge these dangers and to provide security measures.

As acknowledged by the Defendant, Dylan Lyons ("Lyons") was fatally shot while working for the Defendant as a news reporter covering a story in Pine Hills, Orange County, Florida, and his loss of life is tragic. (Defendant's Motion to Dismiss the Plaintiff's First Amended Complaint (the "Motion to Dismiss"), pp. 1-2). In an attempt to avoid liability, the Defendant argues to the Court that the Complaint in this matter should be dismissed under § 440.11, Fla. Stat. (Florida's Workers Compensation Act), as this statute provides a mechanism for recovery.

The Plaintiff's Complaint and Demand for Jury Trial (the "Complaint") was initially filed on January 28, 2025, in the Florida Circuit Court of the Ninth Judicial Circuit, and later removed to this Court by the Defendant through Defendant's Charter Communications, Inc.'s Notice of Removal [Doc. 1] on May 15, 2025.

2

On October 27, 2025, this Court entered an Order that granted without prejudice the Defendant's Motion to Dismiss the Complaint [Doc. 12], and allowed Plaintiff leave to amend his Complaint within 14 days. In entering the Order, the Court held:

> "While Plaintiff contends the intentional tort exception applies, Plaintiff needs to add factual allegations and specificity to the Complaint in order to properly plead the intentional tort exception. If Plaintiff is able to do so, then the issue is factual and is best resolved at summary judgment. Plaintiff will get one opportunity to do so."

The Plaintiff's First Amended Complaint (the "Amended Complaint") cites additional factual allegations in support of the Complaint's three causes of action. In doing so, the Amended Complaint states a claim for relief, and as such, the Plaintiff responds to this Honorable Court that the Motion to Dismiss should be denied.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Corcel Corp. v. Ferguson Enters., 551 Fed. Appx. 571 (11th Cir. Fla. 2014) citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); see also, Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). The plausibility standard is met where the facts alleged enable

3

"the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court must draw the facts from the Complaint, accept those facts as true, and construe them in the light most favorable to the plaintiff. Butler v. Sheriff of Palm Beach County, 2012 U.S. App. LEXIS 13844 (11th Cir. Fla. July 6, 2012); citing Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1271(11th Cir. 2012). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Butler, *supra,* at *8-9.

For the Motion to Dismiss, the Court must view the allegations of the Amended Complaint in the light most favorable to the Plaintiff, must consider the claims of the Complaint as true, and must accept all reasonable inferences therefrom. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007).

### III.    INCORPORATED MEMORANDUM OF LAW

### A.    The affirmative defense of workers' compensation immunity in this matter is not properly considered as a motion to dismiss

The Motion to Dismiss states, "Here, Plaintiff's complaint alleges facts sufficient to show the existence of a worker's compensation defense on a motion to dismiss." Gen. Cinema Bevs. V. Mortimer, 689 So.2d 276, 278 n.3 (Fla. 3d DCA 1995). (Motion to Dismiss, p. 7).

4

However, the <u>Mortimer</u> case held that the legal issue raised by the employer clearly appears on the face of the complaint "because the employee has brought suit against the employer based on <u>Section 440.39, Florida Statutes.</u>" <u>Id.</u> at 278. In this case, the Complaint cites Count I – Negligence of Defendant; Count II – Virtual Certainty and Concealed Danger Against Defendant; and Count III – Gross Negligence of Defendant.

The fact alone that the Complaint includes the cause of action in Count II does not establish that the affirmative defense of the worker's compensation act appears on the face of the complaint.

**B.    The Virtual Certainty and Concealed Danger Exception applies in this case.**

The Motion to Dismiss (pp. 9-10) cites the test for whether an employee can bring a civil action outside of the Florida Worker's Compensation Act:

> (b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
>
> 1. The employer deliberately intended to injure the employee; or
>
> 2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee

from exercising informed judgment about whether to perform the work.

§ 440.11(1)(b), <u>Fla. Stat.</u>

The Defendant operates more than 30 separate television and digital networks in 12 different states. (Complaint, ¶6) More specifically, Spectrum News 13 provides local news coverage in Brevard, Flagler, Lake, Marion, Orange, Osceola, Polk, Seminole, and Volusia counties in Central Florida. Given the Defendant's substantial operations in television news stations and digital networks, and especially providing the Plaintiff all reasonable inferences of the evidence, the Defendant should know about the dangers that journalists face.

As cited in Paragraph 27 of the Complaint, the issue of journalist violence is so prevalent that over 168 separate news organizations, journalist associations, and press freedom Non-Governmental Organizations worldwide came together to create the A Culture of Safety Alliance ("ACOS").

The Industry Standard for Safety Training ("ISST"), developed by ACOS, has led the initiative to establish and implement specific education for journalists regarding physical threats, hazards, and risks associated with weapons. (Complaint, ¶28) The Defendant's not being a signatory to the ACOS demonstrates the refusal to accept the dangers that journalists employed by the

Defendant face, and an avoidance of the issue synonymous with a turtle placing its head into its shell.

The February 22, 2023, homicide of Natacha Augustin was covered by all local television news stations in the Central Florida media market. (Complaint, ¶13) At the time of his death, Lyons had only worked from the Defendant for approximately eight months, and had been a reporter for only approximately two years. (Complaint, ¶¶5, 32)

However, other experienced journalists assessed the news scene and determined it to be immediately and inherently dangerous and left. For example, a veteran journalistic videographer from another news station was able to identify immediate and obvious dangers on the same news scene and left. (Complaint, ¶¶14-5, 33-4).

The Defendant assigned Lyons to travel to a high-crime area to cover the death of a woman executed inside a motor vehicle before the shooter fled the area. (Complaint, ¶12, 16) The Defendant was further aware that the shooter was not in custody and at large at the time the Defendant sent Lyons to the crime scene. (Complaint, ¶12)

At the time Lyons was sent to the news scene, Natacha Augustin had been murdered at least four hours before. (Complaint, ¶12) Such news assignment to a homicide scene demonstrates an explicit presentation of a known danger to the

Defendant. It is the fact of another homicide in a dangerous high crime neighborhood that presented the "newsworthy" event that the Defendant had Lyons cover. Lyons' reaction of going to the same without any safety personnel or equipment demonstrates a lack of awareness of this otherwise apparent risk, and the Defendant's assignment to Lyons of going into this danger misrepresented to Lyons the peril of this assignment.

Instead of fleeing the scene Lyons was left "lying in wait in the front passenger seat of the station's news vehicle when Moses approached and ambushed Plaintiff Lyons by shooting through the news vehicle and striking Plaintiff LYONS through the side of his chest." (Complaint, ¶33)

In Gorham v. Zachry Indus., Inc., 105 So.3d 629, 634 (Fla. 4th DCA 2013), the Florida Fourth District Court of Appeals defined the virtual certainty test exists when "[t]he employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury of death to the employee."

Respectfully, over 168 global news organizations, journalistic associations, and press freedom Non-Governmental Organizations have identified virtual certainty of injury or death to journalists, triggering the necessity of safety training and equipment to protect the hundreds of journalists who are shot or otherwise attacked while on assignment.

The Florida First District Court of Appeals has held: "Generally, a master or employer has an affirmative duty to provide his servants or employees with reasonably safe instrumentalities and places to work. Hicks v. Kemp, 79 So.2d 696, 699 (Fla. 1955); Dearing v. Reese, 519 So.2d 761 (Fla. 1st DCA 1988). An employer has a duty to exercise ordinary care and diligence in maintaining a safe workplace, taking into account the exigencies of the circumstances and the nature of the work to be done. Richards Co., Inc. v. Harrison, 262 So.2d 258, 261 (Fla. 1st DCA), *cert. denied*, 268 So.2d 165 (Fla. 1972); Hicks v. Kemp, 79 So.2d at 700.

On February 22, 2023, Lyons' workplace was the crime scene at the intersection of Harrington Drive and Hialeah Street in Pine Hills, Orange County, Florida. Ordinary care and diligence to safety required the Defendant to provide safety training and basic safety instruments, including private security or body armor, for reporters like Lyons.

The foreseeable facts pled in the Complaint include Lyons being sent to Harrington Drive and Hialeah Street to cover a murder involving a shooter that escaped the crime scene; the widely known hundreds of instances of violence against journalists leading to journalistic organizations around the world coming together to develop and implement safety training for journalists; a scene obviously dangerous enough that a trained and experienced journalist at the same location immediately recognized the danger of the assignment and left the area;

and that the Defendant operates over 30 separate television news channels that includes news coverage of violent incidents in high crime locations (Complaint, ¶¶6, 9, 12, 14-29).

Drawing all reasonable inferences of the evidence in the Plaintiff's favor, the Defendant's act of ordering a young news reporter who was not provided training or safety equipment to a high-crime area to cover the shooting of Natacha Augustin by Keith Moses, who was at large after the shooting, disregards recognition of the dangerous nature of said workplace.

As pleaded above, the Complaint cites an epidemic of danger to journalists to a degree that major news organizations worldwide have come together to establish organizations, training, and simple standards for safety. The fact that the Defendant, a nationwide media company operating in numerous states, attempts to argue that there is no pleading proof that they were aware of any known dangers is unreasonable. Further, Paragraph 51 pleads that:

> At all times material hereto, Defendant SPECTRUM breached its duties to Plaintiff LYONS by:
>
> > A. Failing to provide proper warning and instruction regarding the dangers associated with the active shooter.
> >
> > B. Failing to provide proper training and education regarding the dangers of covering an active shooter incident and situational awareness while on a crime scene.

10

C. Failing to provide adequate safety equipment to protect against the violent attack of an at large active shooter.

D. Failing to exercise reasonable care under all of the relevant surrounding circumstances.

E. Failing to protect, prevent, and warn of the known dangers of the above referenced active shooter…

A reasonable inference related to the cited paragraphs above at this stage of the pleadings inures to the Plaintiff insofar as the Defendant has wholly failed to provide training, safety measures, basic safety equipment, or due diligence to determine whether their journalists are safe covering the news that the Defendant demands for corporate profits.

## C.    The Defendant's actions deliberately concealed and misrepresented the danger Lyons faced on the day of his death.

The Complaint cites that Lyons was going to a high-crime area to report on the murder of an innocent person that was dangerous enough that another reporter who traveled to the same location almost immediately left the area. The Defendant believed this to be a newsworthy enough event to order Lyons to go into such an area while the murder suspect was not in custody and had left the scene. Requiring an employee in this situation to do so misrepresents the dangers present in the scope of employment.

11

The Motion to Dismiss cites the authority of <u>List Industries, Inc. v. Dalien</u>, 107 So.3d 470, 471 (Fla. 4th DCA 2013) in support of defining virtual certainty as requiring that "a plaintiff must show that a given danger will cause an accident every – or almost every – time."[1]

Cases such as <u>List Industries</u>, <u>Ramirez</u>, and <u>Wal-Mart</u> all involve personal injury claims based upon the use of machinery or instrumentality by an employee in the furtherance of their employment. However, the factual scenario of this case is diametrically opposite as the foreseeable danger does not involve a tangible piece of machinery. Unlike in <u>Vallejos</u>, which involved the amputation of four fingers from a forklift accident, Lyons was at the mercy and will of a killer. The widespread demonstration of journalistic violence, especially in high crime areas, demonstrates that being unprotected a few hours after a murder in a high crime area could cause damages every, or almost every time. The instrumentality of the damaging mechanism for journalists is not a forklift, but instead, the dangerous locations they are required report from.

The Court's Order cited <u>Vallejos v. Lan Cargo S.A.</u>, 116 So.3d 545, 555 (Fla. 3d DCA 2013) and <u>Lawton v. Alpine Engineered Prods., Inc.</u>, 498 So.2d 879, 880

---

[1] The Motion to Dismiss also cited the authority of <u>Ramirez v. Mod. Constr. Experts, LLC</u>, 2021 Fla. Cir. LEXIS 17707 (Fla. 14th Cir. Ct., March 29, 2021), *4-6, and <u>Jackson v. Wal-Mart Stores, Inc.</u>, No. 6:09-cv-777-Orl-28GJK, 2009 U.S. Dist. LEXIS 92070, at *4 (M.D. Fla. Oct. 1, 2009) for the same legal theory.

(Fla. 1986) for the principle that the failure to provide safety guards, the ignoring of manufacturer's warnings, and the failure to train operators about a machine's dangers may constitute gross negligence, but not an intentional tort.

However, in this case, the failure to provide employees such as Lyons with training, security, or even something as simple as a bulletproof vest or body armor, communicates to young and unexperienced reporters their assignments are safe. By failing to provide these measures, coupled with the failure to establish practices and procedures to highlight the dangers of news broadcast cites in dangerous areas, and refusal to participate in journalistic safety organizations, the Defendant's actions, in total, conceals and misrepresents the danger that Lyons faced when on February 22, 2023, he traveled to Hialeah Street at the Defendant's assignment.

The Defendant argues that the Amended Complaint fails to demonstrate that the Defendant was aware of an active shooter in the area or that Moses was in the area after having fled the scene. (Motion to Dismiss, p. 15) Respectfully, there was no question that what constituted the news worthiness of the story was the exact fact that one person was murdered by someone who was not in custody in a high crime neighborhood. Further, the fact that Moses was at large after having executed someone inside of a vehicle clearly demonstrates an ongoing threat.

The Motion to Dismiss further argues the lack of specific allegations that Charter was aware of prior incidents involving Charter employees or reporters in the same area. (Motion to Dismiss, p. 16). Such an argument would be more meritorious if the Defendant operated a small news outlet in a small market. However, the Defendant operates news channels in some of the largest media markets in the County (e.g. New York City; Orlando, Florida; Tampa, Florida; Southern California; Austin, Texas; Cleveland, Ohio; Columbus, Ohio; St. Louis, Missouri). The dangers facing journalists covering homicide scenes in high crime areas is not unique to the Defendant, but faced across all of journalism. The refusal for the Defendant to educate and disclose these types of dangers to Lyons, and other journalists, misrepresents the danger they face when going to a news scene.

## IV.    CONCLUSION

All Parties recognize that Lyons death is a tragedy for the journalism profession and our community. This death was easily avoidable had the Defendant not concealed and misrepresented the danger involved through sending a young and unexperienced reporter into a high crime neighborhood to report on a homicide involving a murderer at large. The Amended Complaint pleads specific facts to demonstrate the commission of an intentional tort which serves as an exception to Florida's Workers Compensation law. Respectfully, the Plaintiff argues to this Court that the Motion to Dismiss should be denied.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss Complaint [Doc. 12], and for all other relief this honorable court deems necessary and appropriate.

Dated: December 15, 2025                    Respectfully submitted,

                                            /s/ Ryan J. Vescio
                                            Ryan J. Vescio, Esquire
                                            Florida Bar Number: 14032
                                            Mark E. NeJame, Esquire
                                            Florida Bar Number: 310931
                                            DeLayne Penland, Esquire
                                            Florida Bar Number: 1024836

                                            **NEJAME LAW, P.A**
                                            111 N. Orange Ave., Ste. 1300
                                            Orlando, FL 32801
                                            PH: (407) 500-0000
                                            F:    (407) 802-1448
                                            ryan@nejamelaw.com
                                            mark@nejamelaw.com
                                            delayne@nejamelaw.com
                                            PI@nejamelaw.com
                                            *Attorney(s) for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed this 15th day of December 2025, using the CM/ECF portal filing system which will send and electronic copy of the foregoing to all counsel of record, including:

JERRY D. HAMILTON
Florida Bar No.: 970700

jhamilton@hamiltonmillerlaw.com
PAUL G. TOTTEN
Florida Bar No.: 529931
ptotten@hamiltonmillerlaw.com
BRIAN T. BARRIFFE
Florida Bar No.: 1024874
bbarriffe@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL
150 Southeast Second Avenue,
Suite1200
Miami, Florida 33131-2332
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
*Counsel for Defendant*